UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN MCCRAY,

                         Plaintiff,

   -against-

WESTCHESTER COUNTY; W.C.D.O.C.;
COMMISSIONER KEVIN CHEVERKO;
ARAMARK CORRECTIONAL SERVICES, LLC;
ARAMARK FOOD SERVICE; DIRECTOR
MANUAL MENDOZA; ARAMARK KITCHEN
CIVILIAN CHARLES; ARAMARK KITCHEN
CIVILIAN COLEY; ARAMARK KITCHEN
CIVILIAN PENNY; ARAMARK KITCHEN
CIVILIAN CRAIG,

                         Defendants.

18-cv-03494 (NSR)

ORDER & OPINION

NELSON S. ROMÁN, United States District Judge:

    Plaintiff John McCray ("Plaintiff"), proceeding *pro se*, commenced this action on April 17, 2018 alleging violations of the First, Eighth, and Fourteenth Amendments against Defendants Aramark Correctional Services, LLC, ("Aramark") and various members of the Aramark staff, Westchester County ("Westchester"), W.C.D.O.C, and various Westchester employees (collectively, "Defendants"), alleging that he consistently received substandard and non-Kosher food while imprisoned. (Amended Complaint ("Am. Compl."), ECF No. 37.) Presently before the Court is the Defendants' motion to dismiss the Amended Complaint (ECF No. 66.) For the following reasons, the Defendants' motion is GRANTED.

## BACKGROUND

    The following facts are taken from Plaintiff's Amended Complaint and are construed in the light most favorable to Plaintiff and accepted as true for purposes of this motion.

1

From approximately May 6, 2017 to March 19, 2018, Plaintiff was detained at the Westchester County Department of Corrections ("WCDOC"). (Am. Compl. at 2.) Plaintiff alleges he is Jewish and eats a Kosher diet. (*Id*.) While detained, Plaintiff alleges that Westchester and Aramark consistently served food that was "rotten, stale, old, non-Kosher and repetitive." (*Id*. at 3.) Plaintiff alleges that all Defendants were aware of his complaints and grievances and were associated or responsible for the preparation or administration of the Kosher diet meals. (*Id*.) Plaintiff has experienced "vomiting, nausea, severe stomach cramping, dramatic weight loss and . . . depression and anxiety." (*Id*.)

Plaintiff filed his complaint and exhibits on April 17, 2018. (ECF No. 2.) Plaintiff then filed the Amended Complaint on August 12, 2019. (ECF No. 44.) On July 6, 2020, the Court granted Defendants leave to file a motion to dismiss. (ECF No. 51), which they did on April 6, 2021. (ECF No. 65.) Plaintiff did not oppose the motion. (ECF No. 70.)

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pled factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

Where a motion to dismiss is unopposed, a court should nevertheless "assume the truth of a pleading's factual allegations and test only its legal sufficiency." *McCall v. Pataki*, 232 F.3d 321, 322 (2d Cir. 2000). While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as

true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 662, 678 (quoting *Twombly*, 550 U.S. at 555). The critical inquiry is whether the plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555. A motion to dismiss will be denied where the allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where a *pro se* plaintiff is concerned, courts must construe the pleadings in a particularly liberal fashion. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Further, courts must interpret a *pro se* plaintiff's pleadings "to raise the strongest arguments that they suggest." *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (internal citation omitted). Nevertheless, a *pro se* plaintiff's pleadings must contain factual allegations that sufficiently "raise a right to relief above the speculative level," *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010), and the court's duty to construe the complaint liberally is not "the equivalent of a duty to re-write it," *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009).

## **DISCUSSION**

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see also Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). To state a claim under Section 1983, a plaintiff must allege (1) "the challenged

3

conduct was attributable to a person who was acting under color of state law," and (2) "the conduct deprived the plaintiff of a right guaranteed by the U.S. Constitution." *Castilla v. City of New York*, No. 09 Civ. 5446(SHS), 2013 WL 1803896, at *2 (S.D.N.Y. Apr. 25, 2013); *see also Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

Pursuant to Section 1983, Plaintiff alleges violations of the First, Eighth, and Fourteenth Amendments. Defendants allege that the Amended Complaint fails to plead (i) a custom or policy required for *Monell* liability; (ii) the personal involvement of the individual Defendants; (iii) a constitutional violation arising out of a condition of confinement; and (iv) sincerely held religious beliefs substantially burdened by the Defendants. The Court will address each below.

## I. *Monell* Liability Against Westchester and Aramark

The Amended Complaint names both Aramark and Westchester as Defendants.[1] (*See* Am. Compl.) Defendants aver that the Amended Complaint does not plead a custom or policy needed to establish *Monell* liability. (Mem. at 9-12.) For the reasons discussed below, the Court agrees with Defendants.

For municipalities and officers acting in their official capacities, liability under Section 1983 may not be found on a *respondeat superior* theory solely because the municipality or officer employs the actor who commits the wrongdoing or violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Under *Monell*, a plaintiff must allege "that the municipality itself caused or is implicated in the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004). The Second Circuit uses a two-prong approach in determining *Monell* liability

---

[1] As WCDOC cannot be sued in its own name, it is dismissed as a defendant. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued.").

for Section 1983 claims. *Vippolis v. Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985). First, the plaintiff must plead "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer." *Id*. Second, the plaintiff must allege a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Hayes v. County of Sullivan*, 853 F.Supp.2d 400, 439 (S.D.N.Y. 2012) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

> To plead an official custom or policy, a plaintiff must allege one of the following:
>
> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (internal citations omitted). If a plaintiff alleges *Monell* liability for a municipality or official based on an unofficial policy or custom, then the practice, custom, or usage must be so widespread and persistent that it has the force of law. *Goode v. Westchester County*, No. 18-cv-2963 (NSR), 2019 WL 2250278, at *3 (S.D.N.Y. May 24, 2019). However, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 122 (2d Cir. 1991) (internal quotation marks omitted)).

Alternatively, where municipal liability is based on a failure to train employees, the inadequate training itself must "reflect[ ] deliberate indifference to . . . constitutional rights." *City of Canton*, 489 U.S. at 392. To allege deliberate indifference, a plaintiff must properly plead (1) "that a policymaker knows to a moral certainty that [his or] her employees will confront a given

5

situation"; (2) "that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "that the wrong choice by the . . . employee will frequently cause the deprivation of a citizen's constitutional rights." *Okin v. Villiage of Cornwall-On-Hudson Police Dep't*, 577 F.3d 415, 440 (2d Cir. 2009).

First, the Amended Complaint does not explicitly allege that Westchester or Aramark created an official municipal policy or custom regarding food services. Nor does Plaintiff have sufficient factual allegations to establish an unofficial custom as to Westchester and Aramark's failure to train, supervise, or discipline its employees, so widespread and persistent as to have the force of law. *See Smith v. Westchester County*, 19-cv-03605 (NSR), 2021 WL 2856515, at *5–6 (S.D.N.Y. July 7, 2021) (dismissing *Monell* claims where the plaintiff failed to include an express policy in the complaint and merely alleged issues pertaining to three people).

Next, a failure to train or supervise constitutes a policy or custom that is actionable under Section 1983 only where "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Plaintiff alleges broadly that the Defendants "were associated and/or responsible for the preparation or administering of the Jewish-Kosher diet meals and/or an employee and/or representative for Aramark." (Am. Compl. at 3.) Without any further factual allegations, Plaintiff's claim that Westchester and Aramark were aware of these issues and failed to train, supervise, or discipline their employees is a legal conclusion rather than a factual allegation sufficient to state a *Monell* claim. *Smith*, 2021 WL 2856515, at *5; *see also Quick v. Westchester County*, No. 18-CV-243 (KMK), 2019 WL 1083784, at *5 (S.D.N.Y.

Mar. 7, 2019) (dismissing *Monell* claim where a plaintiff alleged failure to supervise kitchen workers who did not wear hair nets because the complaint was "devoid of any detailed factual allegations" that the defendant lacked "a relevant training or supervisory program" or that it "was otherwise deliberately indifferent to food preparation problems"); *Triano v. Town of Harrison,* 895 F. Supp. 2d 526, 539–40 (S.D.N.Y. 2012) (dismissing *Monell* claim where the plaintiff "merely alleged that the [t]own failed to train its employees, without providing any supporting factual detail about alleged deficiencies in the training program").  Plaintiff has not cited any deficiencies in Aramark or Westchester's training or supervision protocols.

Therefore, as presently pleaded, Plaintiff's Section 1983 claims against Westchester and Aramark must fail.  Consequently, all claims in this action are dismissed without prejudice as against Westchester and Aramark.[2]

## II.   Conditions of Confinement Claim

Defendants next allege that Plaintiff has failed to allege a sufficient constitutional violation arising out of a condition of confinement. (Mem. at 14-19.)  A "pretrial detainee's claims of unconstitutional conditions of confinement are governed by the Due Process Clause of the Fourteenth Amendment," whereas an inmate's claims arise under "the Cruel and Unusual Punishments Clause of the Eighth Amendment."  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  Plaintiff does not explicitly state in the Amended Complaint whether he is a detainee or inmate.  Regardless of his classification, however, the Constitution requires that prison officials

---

[2] If Plaintiff is also filing suit against the individual Defendants in their official capacities, those claims are also dismissed.  "[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent.'"  *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).  Therefore, the *Monell* standard also applies to potential official capacity claims.  *See Forest v. Petranker*, 19-CV-05519 (PMH), 2020 WL 3640007, at *7 (S.D.N.Y. July 6, 2020) ("the *Monell* standard applies to Plaintiff's official capacity claims").  Just as with Plaintiff's *Monell* claims against Aramark and Westchester, the Court finds that he has failed to identify an official policy, practice, or custom that led to alleged constitutional violations, and therefore any claims against the Defendants in their official capacities are also dismissed.

"provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

Under the deliberate indifference test, "[t]he objective prong is the same under either [the Eighth or Fourteenth] analysis: It requires that the deprivation at issue be, 'in objective terms, sufficiently serious.'" *Simmons v. Mason*, No. 17-CV-8886 (KMK), 2019 WL 4525613, at *9 (S.D.N.Y. Sept. 18, 2019) (internal citation omitted). A plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Darnell*, 849 F.3d at 30. "There is no 'static test' to determine whether a deprivation is sufficiently serious; instead, 'the conditions themselves must be evaluated in light of contemporary standards of decency.'" *Id.* (quoting *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995)).

Conversely, the subjective prong differs between the Fourteenth and Eighth Amendment analyses. Under the Eighth Amendment, a convicted prisoner must show that a correction officer "kn[ew] of and disregard[ed] an excessive risk to inmate health and safety; the official must both [have been] aware of facts from which the inference could [have been] drawn that a substantial risk of serious harm exists, and he must [have] also draw[n] the inference." *Farmer*, 511 U.S. at 837. On the other hand, under the Fourteenth Amendment, a plaintiff must plausibly allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Strange v. Westchester Cty. Dep't of Corr.*, No. 17-CV-9968 (NSR), 2018 WL 3910829, at *2 (S.D.N.Y. Aug. 14, 2018) (internal quotations omitted). This standard is "defined objectively" and "can be violated when an official does not have subjective awareness

that the official's acts . . . have subjected the pretrial detainee to a substantial risk of harm." *Darnell*, 849 F.3d at 35.

Here, Plaintiff alleges that at WCDOC he was continually served rotten, old, non-Kosher, and repetitive meals. (Am. Compl. at 3.) As a result, Plaintiff alleges he has suffered from vomiting, nausea, stomach cramping, weight loss, depression, and anxiety. (*Id*.) The Constitution "require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it." *Osorio v. Westchester County*, No. 18-CV-5620 (KNIK), 2019 WL 3958443, at *4 n.3 (S.D.N.Y. Aug. 21, 2019) (citing *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983)). "[A]llegations that a prisoner was served food contaminated or tainted by foreign objects" may satisfy the objective prong of the deliberate indifference test. *Crispin v. Westchester County*, No. 18 CV 7561 (VB), 2019 WL 2419661, at *3 (S.D.N.Y. June 10, 2019) (quoting *Ballard v. Lane*, No. 18-cv-1721 (AJN), 2019 WL 1129158, at *2 (S.D.N.Y. Mar. 12, 2019)). Conversely, allegations that meals are "'small,' 'uneven,' or 'minimal'" are not enough to adequately plead a sufficiently serious condition of confinement. *Pagan*, 2014 WL 982876, at *17. A key consideration is whether the provision of food ultimately poses an "imminent danger to the inmate's health and well-being." *Harris v. Ashlaw*, No. 9:07-CV-0358 (LEK/DEP), 2007 WL 4324106, at *5 (N.D.N.Y. Dec. 5, 2007). Further, for a claim related to food to survive, a plaintiff must allege that he or she suffered a "distinct and palpable injury." *M.F. v. Reish*, No. 95 CIV. 4904 (SAS), 1996 WL 345953, at *4 (S.D.N.Y. June 21, 1996) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

While the Court agrees with Defendants that food merely served cold or without a wide range of variety is not serious enough to constitute a constitutional violation, Plaintiff's allegations

of rotten and stale food considered with his resulting injuries are sufficient to pass the objective prong of the deliberate indifference test. *See Smith*, 2021 WL 2856515, at *8 (holding that being served undercooked, old, and moldy food and water were "obvious health hazards"); *Pagan*, 2014 WL 982876, at *16–17 (holding that undercooked, rotted food served with insects on moldy trays which resulted in nausea, stomach pain, and other health issues were sufficiently serious); *Griffin v. Smith*, 493 F. Supp. 129, 131 (W.D.N.Y. 1980) (holding unsanitary food utensils, cigarette burns and hair on the meal trays were sufficient evidence on a motion to dismiss of a serious deprivation). Plaintiff has adequately pled food-related issues and serious injuries as a result, such as nausea, vomiting, significant weight loss, and mental health issues. Therefore, Plaintiff has satisfied the first prong.

However, Plaintiff's claims fail under the subjective prong of the deliberate indifference test under both the Eighth Amendment and Fourteenth Amendment standards. Plaintiff merely alleges that the Defendants were associated with or responsible for the preparation or administration of the Kosher meals. Plaintiff has failed to allege any facts sufficient to show that any of the Defendants knew and disregarded, or recklessly failed to mitigate the risks posed by the alleged food issues. Further, while Plaintiff alleges that the Defendants were aware of complaints and grievances regarding the food, mere knowledge and acquiescence is not enough to state a claim under Section 1983. *Smith*, 2021 WL 2856515, at *9 (finding that an inmate failed to sufficiently plead intent or deliberate indifference where the defendants were aware that he was being served rotten and cold food).

Therefore, as presently pleaded, Plaintiff's food contamination claim must fail, and it is dismissed without prejudice.

### III. First Amendment

The Amended Complaint also asserts a violation of the First Amendment. (Am. Compl. at 3.) The Free Exercise Clause of the First Amendment states, "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S Const. amend. I. Prison inmates are protected by the clause, though not necessarily to the same extent as others. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives."). To state a free exercise claim, a plaintiff "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006). "[A] substantial burden exists where the state 'puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (citing *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981)). Even if a plaintiff can establish the defendants substantially burdened his right to exercise, he cannot state a free exercise claim if the defendants can show "the disputed official conduct was motivated by a legitimate penological interest." *Salahuddin*, 467 F.3d at 276.

Here, Plaintiff alleges that he was fed non-Kosher meals in violation of his religion. (Am. Compl. at 2-3.) In response, Defendants aver that Plaintiff fails to allege how his religious beliefs were substantially hindered. (Mem. at 20.) The Second Circuit has recognized that the free exercise of religion includes "the right of prisoners to receive diets consistent with their religious scruples," *Kahane v. Carlson*, 527 F.2d 492, 495 (2d Cir. 1975), and "to deny prison inmates the provision of food that satisfies the dictates of their faith does unconstitutionally burden their free exercise rights," *McEachin v. McGuinnis*, 357 F.3d 197, 203 (2d Cir. 2004). Therefore, drawing all reasonable inferences in Plaintiff's favor, the Court concludes that Plaintiff has alleged a substantial burden on his religion. *See Corbett v. Annucci*, No. 16-cv-4492 (NSR), 2018 WL

919832, at *3 (S.D.N.Y. Feb. 13, 2018.) (upholding the plaintiff's free exercise claim where he alleged he was "being unjustly compelled to violate his religion due to the religiously unlawful food that he [was] forced to eat").

However, Defendants also aver that Plaintiff fails to allege the personal involvement of the individual Defendants. ""It is well settled that . . . to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). "The general doctrine of *respondeat superior* does not suffice and a showing of some personal responsibility of the Defendant is required." *Al-Jundi v. Estate of Rockefeller*, 885 F.2d 1065 (2d Cir. 1989). Further, supervisory officials may be personally involved within the meaning of Section 1983 only if he or she participated in unlawful conduct. *See Williams v. Smith*, 781 F.2d 319, 323–24 (2d Cir. 1986) ("A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong, . . . created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue, . . . [or] was grossly negligent in managing subordinates"). "A Plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). In the context of a prisoner's lawsuit, a Plaintiff must show "more than the linkage in the prison chain of command" to state a claim against a supervisory defendant. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985).

Here, Plaintiff alleges broadly that "ALL ten Defendants named in the complaint were aware of the complaints/grievances; were associated and/or responsible for the preparation or administering of the Jewish-Kosher diet meals and/or an employee and/or representative for Aramark Correctional Services LLC." (Am. Compl. at 3.) This falls below the required showing.

Plaintiff has not alleged a single act committed by any of the individual Defendants that contributed to or resulted in his alleged constitutional violations. *See Leneau v. Ponte,* 1:16-cv-776-GHW, 2018 WL 566456, at *15 (S.D.N.Y. Jan 25, 2018) (holding allegations "that rely on 'group pleading' and 'fail to differentiate as to which defendant was involved in the alleged unlawful conduct are insufficient to state a claim.'") (internal citation omitted); *Webster v. Fischer*, 694 F. Supp. 2d 163, 179 (2010) ("Vague and conclusory allegations that a supervisor has failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability.").

Therefore, Plaintiff's First Amendment claim also fails, and is dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, the Defendants' motion is GRANTED. Plaintiff is granted leave to file a Second Amended Complaint as to any claims that have not been dismissed with prejudice. If he chooses to do so, Plaintiff will have until January 31, 2022 to file a Second Amended Complaint consistent with this order. Plaintiff is advised that the Second Amended Complaint will replace not supplement the Amended Complaint so any claims he wants to pursue must be included in or attached to the Second Amended Complaint. An Amended Civil Rights Complaint form is attached to this Order. Defendants are then directed to answer or otherwise respond by February 15, 2022.

If Plaintiff fails to file a Second Amended Complaint within the time allowed, and he cannot show good cause to excuse such failure, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 65. The Clerk is also respectfully directed to mail a copy of this Opinion and Order to Plaintiff at the address listed on ECF, and to file proof of service on the docket.

Dated: November 30, 2021
      White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge